**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **REBECCA STONEBACK,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| v. | : | |
| | : | |
| **ARTSQUEST, et al.,** | : | |
| **Defendants.** | : | **NO. 12-3286** |

<u>**MEMORANDUM RE: MOTIONS TO STRIKE PLAINTIFF'S JURY DEMAND AND**
**FOR A MORE DEFINITE STATEMENT OF PLAINTIFF'S CLAIMS**</u>

**Baylson, J.** **October 17, 2012**

**I.      Introduction**

Plaintiff Rebecca Stoneback ("Plaintiff") brought this action against Defendants

ArtsQuest, Jeffrey Parks ("Parks"), Walter Keiper ("Keiper"), Tanya Doddy ("Doddy"), and

Cindy Karchner ("Karchner") (collectively, "Defendants") claiming wrongful termination in

violation of:

> 1.      The Pennsylvania Whistleblower Law, 43 P.S. § 1421 et seq.,
> alleging that she was terminated because she reported
> wrongdoing to her superiors, and

> 2.      The public policy of Pennsylvania, alleging that she was
> terminated after refusing to commit a crime at ArtsQuest's
> behest.

(Compl. ¶¶ 42, 46.)

Defendants filed two motions, one to Strike Plaintiff's Jury Demand for her

Whistleblower Claim (the "Motion to Strike") and another pursuant to Fed. R. Civ. P. 12(e) for a

More Definite Statement of Plaintiff's Claims (the "Motion for a More Definite Statement").  For

the reasons below, the Court denies the Motion to Strike without prejudice and denies in part and

grants in part the Motion for a More Definite Statement, requiring Plaintiff to provide a more

definite statement of only her Public Policy Claim.

## II.    Background and Summary of Facts

Plaintiff is a former employee of Defendant ArtsQuest, a non-profit organization located in Bethlehem Pennsylvania, best known for its Banana Factory – which houses, among other things, more than twenty-five studios for resident artists, a digital imaging center, a glass blowing studio, galleries, and classrooms – and hosting Musikfest, a large, multiday music festival.

Plaintiff worked for ArtsQuest as both an instructor and a store clerk for approximately three years.  As a store employee, she was responsible for stocking and selling sundry merchandise, including certain beer steins that commemorate Musikfest (the "Muisikfest Steins").  Plaintiff alleges that ArtsQuest advertised the Musikfest Steins as made in Germany by a company called Gerz, when the steins are, in fact, made in China.  Her belief is based on the alleged Chinese origin of the Musikfest Steins' shipping containers.  According to Plaintiff, the German origin of the Musikfest Steins is important to their marketability as Musikfest memorabilia, because Musikfest is, at least in part, a celebration of the Bethlehem area's rich German and Dutch history.

Upon discovering the Musikfest Steins' Chinese shipping containers, Plaintiff determined not to sell them until ArtsQuest ceased marketing them as German-made, believing this to be fraud.  (Compl. ¶¶ 23, 26.)  Plaintiff alleges that she first reported her concerns about the origin of the Musikfest Steins to her immediate supervisor, Defendant Doddy, and when Doddy brushed them aside, she approached Doddy's immediate supervisor, Defendant Keiper.  Keiper also dismissed Plaintiff's concerns, prompting Plaintiff to raise them with Defendant Karchner, who works in ArtsQuest's human resources department.  Doddy, Keiper and Karchner then allegedly

made a collective decision to fire Plaintiff.

Plaintiff claims that her termination violated both:

1.  The Pennsylvania Whistleblower Law, because she was terminated in retaliation for reporting her concerns about misrepresenting the origin of the Musikfest Steins (the "Whistleblower Claim"), and

2.  The public policy of Pennsylvania, because she was terminated for refusing to commit a crime, specifically, selling Chinese-made beer steins as German-made (the "Public Policy Claim").

(Compl. ¶¶ 23, 32, 41-43, 45-46.)

Currently before the Court are two separate motions, Defendants' Motion to Strike and Motion for a More Definite Statement.

## III.    Elements of Plaintiff's Claims

Because dispositions of both of Defendants' motions are aided by familiarity with the elements of and pleading requirements for Plaintiff's claims, the Court sets them forth below.

### A.    The Pennsylvania Whistleblower Law

In order for Plaintiff to state a claim under the Pennsylvania Whistleblower Law for retaliatory termination, she must allege:

1.  Discharge, and

2.  Because she made or is going to make "a good faith report . . . to [her] employer or appropriate authority an instance of wrongdoing . . . ."

43 P.S. § 1423(a).  A "good faith report" is a "report of conduct defined in this act as wrongdoing . . . which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true"; "wrongdoing" is defined as a

"violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." Id. § 1422.

With respect to pleading wrongdoing properly, Plaintiff need only plead facts sufficient to permit a reasonable inference that Defendants violated some statute, etc., she need not specifically identify it. Bielewicz v. Penn-Trafford Sch. Dist., Civil Action No. 10–1176, 2011 WL 1486017, at *5 (W.D. Pa. Feb. 9, 2011) ("Although [Plaintiff] does not specifically identify the policy or provision of the ethical code she alleges have been breached, the facts alleged certainly suggest that Defendants' actions were violative of 'a code of conduct or ethics' for school officials and, thus, constitute a 'wrongdoing' under the [Whistleblower] statute.  Because [Plaintiff] is only required at this stage of the litigation to state enough facts to raise a right to relief above the speculative level, she has met that burden and Defendants' motion in this regard should be denied."); Keefer v. Durkos, 371 F. Supp. 2d 686, 692 (W.D. Pa. 2005) ("the Court finds no reason for the Plaintiff to enumerate specific laws within her Complaint to withstand the Defendants' Motion to Dismiss.  This conclusion is also consistent with the 'notice pleading' of the Federal Rules of Civil Procedure" (citing Podgurski v. Pennsylvania State Univ., 722 A.2d 730 (Pa. Super 1998)).

**B.     Wrongful Termination in Violation of Public Policy**

In order to state a claim for wrongful termination in violation of public policy, Plaintiff must allege that her termination violates a "'clear public policy articulated in the constitution, in legislation, an administrative regulation, or a judicial decision.'" Tanay v. Encore Healthcare, LLC, 810 F. Supp. 2d 734, 737 (E.D. Pa. 2011) (quoting Hunger v. Grand Cent. Sanitation, 670

4

A.2d 173, 175 (Pa. Super. Ct. 1996)).  Although "Pennsylvania courts have not explicitly defined the boundaries of" this cause of action, they have limited its application to "situations in which an employer":

1.   "[R]equires an employee to commit a crime";

2.   "[P]revents an employee from complying with a statutorily imposed duty"; and

3.   "[D]ischarges an employee when specifically prohibited from doing so by statute."

Id. at 737-38 (citing  Spierling v. First Am. Home Health Servs., Inc., 737 A.2d 1250, 1252 (Pa. Super. Ct. 1999); Hennessy v. Santiago, 708 A.2d 1269, 1273 (Pa. Super. Ct.1998)).

Plaintiff's submissions clearly indicate that Plaintiff alleges only the first scenario, that she was improperly terminated for refusing to engage in criminal conduct at ArtsQuest's behest: "[i]t is against the public policy of this Commonwealth to terminate an employee for refusing to violate criminal law"; "Plaintiff was terminated for refusing to violate criminal law."  (Compl. ¶¶ 45-46.)  In order for Plaintiff to properly plead her claim, she must identify the specific criminal statute(s) that would have been violated by the conduct in which she refused to engage.  See Zoe v. Impact Sys, Inc., No. 08–cv–1483, 2009 WL 275181, at *4 (M.D. Pa. Feb. 4, 2009) (dismissing claim for discharge in violation of public policy where plaintiff alleged discharge for refusal to violate a statutorily imposed duty, but "neglect[ed] to identify any specific regulation imposing a duty" (citing Spierling, 737 A.2d at 1252 ("Since [the plaintiff] did not plead and has not cited to any legal authority which imposed a statutory duty upon her . . . we can afford her no relief on public policy considerations and are constrained to affirm the trial court order . . . dismissing the complaint.")); McCabe v. Women's Resources of Monroe County, No. 6374 Civil

5

2004, 2006 WL 6049499 (Pa. Com. Pl. Aug. 24, 2006) ("plaintiff's complaint fails to set forth a cause of action for wrongful discharge for a clear violation of public policy" where plaintiff failed to "point to any statutory or public policy to substantiate her cause of action").  Conclusory allegations of criminality are patently insufficient.  See Zoe, 2009 WL 275181, at *4 (holding, with respect to properly pleading discharge in violation of public policy under the theory that the conduct for which the plaintiff was terminated was a statutorily imposed duty, that "[m]erely asserting that a duty was imparted upon him by 'Pennsylvania regulations' or the 'laws of this Commonwealth' fails to place Defendants on adequate notice regarding the grounds upon which the duty is based.  Therefore . . . that portion of the Complaint falls below the notice pleading standards employed by the federal courts").

**IV.    Defendants' Motion to Strike Plaintiff's Jury Demand**

> **A.    Legal Standard:  The Federal Right to a Jury Trial Under the Seventh Amendment**

Under Fed. R. Civ. P. 39(a), "[w]hen a jury trial has been demanded . . . [t]he trial on all issues so demanded must be by jury unless . . . the court, on motion or its on its own, finds that on some or all of those issues there is no <u>federal right</u> to a jury trial."  (Emphasis added).

If the cause of action in question is statutory in origin, the first question is whether the statute provides for a jury trial.  <u>Pichler v. UNITE</u>, 542 F.3d 380, 387 (3d Cir. 2008) ("The Supreme Court has instructed that '[b]efore inquiring into the applicability of the Seventh Amendment, we must first ascertain whether a construction of the statute is fairly possible by which the constitutional question may be avoided.'" (quoting <u>City of Monterey v. Del Monte Dunes</u>, 526 U.S. 687, 707 (1999)).  If the statute does not provide for a jury trial, a more

searching analysis is required to determine whether a litigant is entitled to a jury trial under the

Seventh Amendment. Id.

Regarding the federal right to a jury trial under Rule 39(a), it is well

established that:

1.  This right is controlled by the Seventh Amendment,

2.  The Seventh Amendment embodies a "federal policy favoring
    jury trials . . . of historic and continuing strength," and

3.  This right must be "determined according to federal law" in
    order to achieve the "uniformity . . . demanded by the Seventh
    Amendment."

Simler v. Conner, 372 U.S. 221, 222 (1963) (per curium); accord, e.g., Marra v. Philadelphia

Hous. Auth., 497 F.3d 286, 313 (3d Cir. 2007); Tracinda Corp v. Daimler Chrysler AG, 502 F.3d

212, 222 (3d Cir. 2007).  Accordingly, "[t]he right to a jury trial in a federal court, regardless of

whether the claim arises under state law, presents a question of federal law,' 'even when a state

statute or state constitution would preclude a jury trial in state court.'"  Marra, 497 F.3d at 313

(emphasis added) (quoting Africa v. City of Philadelphia (In re City of Philadelphia Lit.),158

F.3d 723, 725 (3d Cir. 1998); Gispon v. KAS Snacktime Co., 83 F.3d 225, 230 (8th  Cir. 1996)).

The Supreme Court has prescribed a two part test for determining whether the Seventh

Amendment guarantees a jury trial for any particular cause of action:

1.  Whether the cause of action "either was tried at law [(as
    opposed to equity or admiralty)] at the time of the founding or
    is at least analogous to one that was'"; and

2.  "'If the action in question belongs in the law category . . .
    whether the particular trial decision must fall to the jury in
    order to preserve the substance of the common-law right as it
    existed in 1791.'"

7

<u>Pichler</u>, 542 F.3d at 388 (quoting <u>Del Monte Dunes</u>, 526 U.S. at 708).  This test "applies not only to common-law causes of action, but also to 'actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the 18th century . . . .'" <u>Id.</u> (quoting <u>Feltner v. Columbia Pictures Television, Inc.</u>, 523 U.S. 340, 348 (1998)).

Determination of whether a statutory action falls into the legal category, as opposed to equity or admiralty categories, entails inquiries into both "the nature of the statutory action and the remedy sought." <u>Id.</u> (citations and quotations omitted).  The Seventh Amendment guarantees jury trials only for those statutory actions that

1.   Are "analogous to causes of action that would have been decided in law courts in the 18th Century," and

2.   "Seek legal relief."

<u>Del Monte Dunes</u>, 526 U.S. at 709 (quotation and citation omitted).

An action is sufficiently analogous to one extant in the 18th century when it "sounds basically in tort," which means simply that it "provide[s] redress for interference with protected personal or property interests," which includes providing redress for violations of rights created by constitution or statute.  <u>Id.</u> at 709-10.  As the Supreme Court held in <u>Del Monte Dunes</u>, "[i]t is settled law . . . that the Seventh Amendment jury guarantee" hinges not on identification of a specific 18th century analogue, but "extends to statutory claims unknown to the common law [when the Seventh Amendment was adopted], so long as the claims can be said to sound basically in tort, and seek legal relief."  <u>Id.</u> at 709 (citation and quotation omitted) (claims under Section 1983 sound basically in tort even though "[i]t is undisputed that when the Seventh

8

Amendment was adopted there was no action equivalent to § 1983").  Indeed, the Supreme Court

has repeatedly emphasized "that characterizing the relief sought is '[m]ore important' than

finding a precisely analogous common-law cause of action . . . ."  <u>Tull v. United States</u>, 481 U.S.

412, 421 (1987) (quoting <u>Curtis v. Loether</u>, 415 U.S. 189, 196 (1974)) ("We need not rest our

conclusion on what has been called an 'abstruse historical' search for the nearest 18th-century

analog." (citation omitted)); <u>accord</u> <u>Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry</u>,

494 U.S. 558, 565 (1990); <u>Grandfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33, 42 (1989).

Regarding characterization of the nature of the relief sought, the Supreme Court has

adopted the "general rule that monetary relief is legal." <u>Del Monte Dunes</u>, 526 U.S. at 710

(quotation and citation omitted).  Of course, not all monetary relief is legal, and the Supreme

Court has stated that, in general, money damages are legal relief where they are intended

compensate the plaintiff for her loss or punish the wrongdoer.  <u>Feltner</u>, 523 U.S. at 352 (stating

that "compensation and punishment" are "purposes traditionally associated with legal relief"

(citing <u>Curtis</u>, 415 U.S. at 196; <u>Tull</u>, 481 U.S. at  422).  Equitable relief, by contrast, is identified

by its measurement according to the value of the wrongdoer's ill-gotten gains.  <u>Del Monte</u>

<u>Dunes</u>, 526 U.S. at 710 (holding that just compensation is legal relief and "differs from equitable

restitution and other monetary remedies available in equity, for in determining just compensation,

'the question is what has the owner lost, not what has the taker gained'" (quoting <u>Boston</u>

<u>Chamber of Commerce v. Boston</u>, 217 U.S. 189, 195 (1910)).

If an action is properly characterized as legal, the court must still determine "whether the

particular trial decision must fall to the jury in order to preserve the substance of the common-

law right as it existed in 1791." <u>Pichler</u>, 542 F.3d at 389 (quotation and citation omitted).  This

9

requires a two step inquiry:

> 1.  An historical analysis, "'looking to history to determine whether the particular issue, or analogous ones were decided by judge or by jury in suits at common law at the time the Seventh Amendment was adopted,'" and
>
> 2.  If the historical analysis is inconclusive, examination of 'precedent and functional considerations." If functional considerations become a factor, then "'predominantly factual issues are in most cases'" properly reserved for a jury's determination.

Id. (quoting Del Monte Dunes, 526 U.S. at 718, 720).

Furthermore, in cases involving both legal and equitable claims, "'there is a right to a jury trial on the legal claims that must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the two claims.'"

Newfound Mgmt. Corp. v. Lewis, 131 F.3d 108 (3d Cir. 1997) (quoting Ross v. Bernhard, 396 U.S. 531, 537-38 (1970)). As the Third Circuit has stated in no uncertain terms:

> [I]f the issues related to both the legal and equitable claims can be resolved in one lawsuit, then the right to a jury trial attendant to the legal claims will prevail. A contrary rule would eviscerate the right to a jury given the preclusive effect that would flow from the rulings in a prior bench trial.

Id. In practical terms, this means that the legal claim must be tried to a jury "first, or at least simultaneously with the equitable claim . . . accepting the jury's findings on common facts for all purposes." Astenjohnson Inc. v. Columbia Casualty Co., 562 F.3d 213, 228 (3d Cir. 2009) (citing Lytle v. Household Mfg. Inc., 494 U.S. 545 (1990); Tull, 481 U.S. 412)).

And, it should also be noted that a court may, sua sponte, empanel an advisory jury, regardless of whether the parties want or are entitled to one under the Seventh Amendment. Fed.

R. Civ. P. 39(c)(1).

**B.     Discussion of Defendants' Motion to Strike Plaintiff's Jury Demand**

As correctly argued by Defendants, the Whistleblower Law itself does not guarantee Plaintiff a jury trial.  Freese v. Centennial Sch. Dist., No. Civ.A. 98-1773, 1999 WL 562752, at *1 (E.D. Pa. July 22, 1999) (Fullam, J.) (citing Wilhelm v. Borough of Braddock, 28 Pa. D. & C.4th 211 (C.C.P. Allegheny 1996); Clark v. Lancaster City Housing Authority, 14 Pa. D. & C.4th 411 (C.C.P. Lancaster 1992)); Miller v. N. Tier Career Ctr., 49 Pa. D. & C.4th 413, 417 (C.C.P. Bradford 2000) (citing Wilhelm, 28 Pa. D. & C.4th 211; Clark, 14 Pa. D. & C.4th 411).[1] Plaintiff does not dispute this.  Instead, Plaintiff urges the Court to adopt the holding in Watson v. Borough of Susquehanna, No. 3:09cv294, 2011 WL 1257501 (M.D. Pa. Mar. 30, 2011) (Munley, J.), that the Seventh Amendment guarantees her a jury trial.[2]  The Court is inclined to adopt Watson's holding, but, as detailed below, declines to do so because of a lack of clarity in Third Circuit precedent.

**1.     Are Claims Under the Whistleblower Law Legal Claims?**

The court begins by determining whether the Whistleblower Claim is properly put in the legal category.  The first step is to inquire whether such a claim sounds basically in tort.

---

[1]Freese also struck the plaintiff's jury demand on this ground.  However, Freese did not analyze whether the Seventh Amendment guarantees a jury trial for Whistleblower Law claims, and this Court declines to follow Freese for this reason.

[2]Plaintiff also points the Court to Romano v. Bucks County Water & Sewer Auth., No. Civ.A.03–2296, 2004 WL 603383 (E.D. Pa. Mar. 25, 2004) (McLaughlin, J.), which held that "plaintiff is entitled to a jury trial on her Whistleblower Law claims."  The Romano court did not, however, provide any reasoning to support this conclusion, stating that it would issue a memorandum on the issue at a later date.  This Court's review of the Romano docket revealed that no such memorandum was issued, and that the case was dismissed with prejudice on April 15, 2004.

The Whistleblower Law protects public employees who have reported, or are going to report, wrongdoing from "discharge, threat[s] . . . discriminat[ion] or retaliat[ion]."  43 P.S. § 1423(a).  The law creates a civil action for "reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages or any combination of these remedies."  Id. §§ 1424-25.  In other words, the Whistleblower Law protects public employees' interests in their jobs by prohibiting retaliatory adverse employment actions and authorizing the courts to compensate employees if their employers engage in this undesirable conduct.  See O'Rourke v. Comw. of Pa., 778 A.2d 1194, 1202 (Pa. 2001) ("the Whistleblower Law is . . . chiefly a remedial measure intended to enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing" (citation and quotation omitted)).  Accordingly, claims under the Whistleblower Act sound basically in tort.  Del Monte Dunes, 526 U.S. at 709 ("[T]here can be no doubt that claims brought pursuant to § 1983 sound in tort.  Just as common-law tort actions provide redress for interference with protected personal or property interests, § 1983 provides relief for invasions of rights protected under federal law."); Curtis, 415 U.S. at 195-96 ("A damages action under [Title VIII] sounds basically in tort – the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach."); see also Pichler, 542 F.3d at 388 (a statutory claim sounded basically in tort because it provided redress for interference with protected personal or property interests, namely "privacy in . . . motor vehicle records and the identifying information therein" (citing Del Monte Dunes, 526 U.S. at 709)); Watson, 2011 WL 1257501, at *9 (coming to a similar conclusion regarding the Whistleblower Law, though finding that it protects "a plaintiff's

12

right to speak freely without interference from self-interested government officials").

Turning to the more important characterization of the relief sought, Plaintiff seeks, and the Whistleblower Law authorizes legal relief, specifically, monetary relief measured in terms of the loss Plaintiff suffered, in particular back pay and actual damages.  43 U.S. § 1425; O'Rourke, 778 A.2d at 1202-03 ("recovery under the [Whistleblower Law] is proportionate to the harm suffered").  There is no question that relief under the Whistleblower Law qualifies as legal, as opposed to equitable, relief.  See Del Monte Dunes, 526 U.S. at 710 (the Supreme Court has "recognized the general rule that monetary relief is legal" (quotation and citation omitted)); Feltner, 523 U.S. at 352 (stating that "purposes traditionally associated with legal relief" are "compensation and punishment" (citations omitted)); see also Watson, 2011 WL 1257501, at *9 (holding that damages awards under the  Whistleblower Law are a legal remedy, but holding so because "[t]he remedy here is designed to punish the culpable individual – the person who retaliated against the plaintiff – for the damage that individual caused").  Accordingly, claims under the Whistleblower Law appear to be legal claims because they both sound basically in tort and provide legal relief.

### 2.    Should the Verdict on Whistleblower Claims Fall to Juries?

Being satisfied that Whistleblower Law claims appear to be properly characterized as legal claims, the Court must now determine whether the "particular trial decision must fall to the jury in order to preserve the substance of the common-law right as it existed in 1791," by:

1.    Asking whether such decisions have historically been made by juries, and

2.    "[I]f the historical analysis is inconclusive, examin[ing] . . . precedent and functional

13

considerations."

Pichler, 542 F.3d at 389 (quotations and citations omitted).

It is highly doubtful, for reasons discussed below, that there was any analogue to Whistleblower Law claims extant at the time the Seventh Amendment was adopted.  When the Court can identify "no precise analogue for the specific test of liability" that would be submitted to the jury, the Court can only make the "inconclusive" "general observation[]" "that in suits sounding in tort for money damages, questions of liability were decided by the jury." Del Monte Dunes, 526 U.S. at 718.

Turning then to precedent, the Court notes that liability and damages in wrongful discharge cases are routinely, perhaps predominantly, determined by juries.  Finally, turning to functional considerations, "[i]n actions at law predominantly factual issues are in most cases allocated to the jury." Id. at 720.  Any determination of liability under the Whistleblower Law will necessarily involve the entirely fact-dependent questions of whether:

1.   Defendants were engaged in wrongdoing as defined by the law,

2.   Plaintiff reported the alleged wrongdoing in good faith as defined by the law, and

3.   Plaintiff was terminated because of her report, and not some other legitimate, non-pretextual reason.

Determination of damages will be equally fact-dependent.  It is "proper to submit" such "factbound question[s] to the jury." Id. at 721.

3.   **Uncertainty in Third Circuit Precedent Compels the Court to Reserve Decision on Whether the Seventh Amendment Guarantees a Jury Trial for Whistleblower Law Claims.**

Before coming to a final conclusion regarding the federal jury trial right for Whistleblower Law claims, the Court recognizes that the most recent Third Circuit case addressing this issue, <u>Pichler v. UNITE</u>, 542 F.3d 380 (3d Cir. 2008), may appear to require that this Court identify an action that both:

> 1. Dates back to the adoption of the Seventh Amendment, and
>
> 2. Covers subject matter similar to Whistleblower Act claims,

because <u>Pichler</u> supported its conclusion that a statutory, privacy-based cause of action is "analogous to common law causes of action ordinarily decided in the courts of law in the late 18th century" by showing that substantively similar actions existed in the mid-18th century. <u>Id.</u> at 388-89. Additionally, District Courts in Pennsylvania, though not necessarily citing <u>Pichler</u>, have also recently issued opinions that emphasize, or at least appear to emphasize, identifying closely analogous causes of action extant in the 18th century. <u>E.g.</u>, <u>De Lage Landen Operational Servs., LLC v. Third Pillar Sys., LLC</u>, Civil Action No. 09-2439, 2011 WL 1627899, at *3 (E.D. Pa. Apr. 28, 2011) ("Since trade secret actions did not exist in 1791, we <u>must</u> assess whether any analogous actions were extant in that era. . . . The close relationship between a patent infringement action and a trade secret misappropriation action weighs in favor of a Seventh Amendment right to a jury trial," because "the descent of today's patent infringement action comes from the infringement actions tried at law in the 18th century . . . ." (emphasis added) (citation and quotation omitted)).

However, in light of the Supreme Court's repeated admonition that finding a precisely analogous cause of action dating back to the 18th century is less important than characterizing

the relief sought, this Court doubts that Pichler is properly read as making such a demand.  It cannot be overemphasized that in Del Monte Dunes, the Supreme Court specifically found that although no analogue to a section 1983 claim existed in the 18th century, such claims still sound basically in tort because to "sound basically in tort" means simply to "provide[] redress for interference with protected personal or property interests."  526 U.S. at 709.

It is also worth noting that a narrow reading of Pichler is inconsistent with the freedom of analogy endorsed by the Supreme Court – for example, in Curtis v. Loether, the Supreme Court approved of analogizing Title VIII housing discrimination claims to claims under the "common-law duty of innkeepers not to refuse temporary lodging to a traveler without justification" and actions for "defamation or intentional infliction of mental distress," 415 U.S. at 195 n.10 – which suggests that courts need not engage in rigorous (perhaps better, tortuous) analogizing efforts.[3]

That said, to the extent that Pichler is properly read as demanding that the Court identify a substantively similar action extant in the 18th century, the Court doubts it could find any such action.  As other courts have noted, whistleblower-type actions are best analogized to actions for wrongful discharge, and retaliatory discharge in particular.  E.g., Spinelli, 12 F.3d 853, 856 (9th Cir. 1993); Schmidt v. Levi Strauss & Co., 621 F. Supp. 2d 796, 801 (N.D. Cal 2008).  It is

---

[3] If this Court were inclined to perform the kind of roving analogizing apparently approved by the Supreme Court, the Ninth Circuit has pointed out that whistleblower-type claims could be described as akin to "breach of fiduciary duty – since [they] impose[] duties on one person for someone else's benefit (here the employer becomes obligated not to fire for an improper reason" or "to a legal claim for breach of implied contract by arguing an implied term (here, a bar against retaliatory discharge . . . . [But] [f]iguring out which of these provides the closer analogy isn't much better than asking whether red is more analogous to green or to yellow."  Spinelli v. Gaughan, 12 F.3d 853, 856 n.2 (9th Cir 1993).

doubtful that analogous actions existed "during the eighteenth century, a time when employment relationships were largely at will.  The cause of action for retaliatory discharge is, rather, a creature of the twentieth century, and the latter part of it at that." Spinelli, 12 F.3d at 856 (citing In-House Counsel's Right to Sue for Retaliatory Discharge, 92 Colum. L. Rev. 389 (1992), for the proposition that the first retaliatory discharge case dates back only to the 1950's). Accordingly, the Court perceives a fork in the road, one road leads to no Seventh Amendment guarantee of a jury trial for Plaintiff's Whistleblower Claim; the other road appears, as demonstrated above, to lead to the undeniable conclusion that the Seventh Amendment guarantees her a jury trial.

As can be gleaned from the foregoing, the Court sees the latter, jury trial, path as correct. Even if the Court's inclination is wrong, the Court believes for the reasons stated below, that a jury should hear the Whistleblower Claim in an advisory capacity, allowing the Court to shelve, at least for now, a final determination of whether the Seventh Amendment guarantees Plaintiff a jury trial on that claim.

### 4.     Use of an Advisory Jury for Plaintiff's Whistleblower Claim

It is undisputed that Plaintiff's Public Policy Claim is a legal claim that is properly tried by a jury.  In order to preserve Plaintiff's jury trial right with respect to that claim, the Court will have to try it first, or at least simultaneously with Plaintiff's Whistleblower Claim – and the Court will be bound by the jury's determination of any issues common to both claims. Astenjohnson Inc., 562 F.3d at 228.  Although the Court cannot predict precisely the issues that will be presented for fact-finder determination – indeed the parties have yet to begin the pre-trial process of refining these issues – Plaintiff's claims appear to be largely overlapping, such that it

is highly likely that there will be issues of fact common to both claims.  Assuming this case

proceeds to trial and verdict, the Court may try the Plaintiff's two claims simultaneously and

submit the Whistleblower Act claim to the jury.  The court need not decide now whether the

jury's verdict will be binding or advisory.  Fed. R. Civ. P. 39(c) (a court may, "on its own," "try

any issue with an advisory jury").  The Court will then make a definitive ruling as to whether the

Seventh Amendment guarantees Plaintiff a jury trial for her Whistleblower Claim, after giving

the parties opportunity for further briefing on the issue.

**V.     Defendant's Motion for a More Definite Statement**

      **A.     Legal Standard:  Rule 12(e) Motion for a More Definite Statement**

      Under Rule 12(e) of the Federal Rules of Civil Procedure, "[a] party may move for a

more definite statement of a pleading to which a responsive pleading is allowed but which is so

vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).

"The Rule 12(e) 'motion shall point out the defects complained of and the details desired.'"

Thomas v. Independence Twp., 463 F.3d 285, 301 (3d Cir. 2006) (quoting Fed. R. Civ. P. 12(e)).

"When presented with an appropriate Rule 12(e) motion for a more definite statement, the

district court shall grant the motion and demand more specific factual allegations from the

plaintiff concerning the conduct underlying the claims for relief."  Id.

      "[M]otion[s] for a more definitive statement [are] generally disfavored, and [are] used to

provide [] remed[ies] for [] unintelligible pleadings rather than as [] correction for [] lack of

detail."  Frazier v. SEPTA, 868 F. Supp. 757, 763 (E.D. Pa.1994); accord Country Classics at

Morgan Hill Homeowners' Ass'n v. Country Classics at Morgan Hill, LLC, 780 F. Supp. 2d 367,

371 (E.D. Pa.2011) ( "Because Federal Rule of Civil Procedure 8 requires only a short and plain

statement of the claim, motions for a more definite statement are highly disfavored." (citation and quotation omitted)).  Rule 12(e) "is directed to the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading."  Schaedler v. Reading Eagle Publ'n, Inc., 370 F.2d 795, 798 (3d Cir.1967). Ultimately, however, "the decision to grant a motion for a more definite statement is committed to the discretion of the district court."  Woodard v. FedEx Freight East, Inc., 250 F.R.D. 178, 182 (M.D. Pa. 2008); accord MK Strategies, LLC v. Ann Taylor Stores Corp., 567 F. Supp. 2d 729, 737 (D.N.J.2008).

     **B.**     **Discussion of Defendants' Motion for a More Definite Statement**

     Defendants argue that unless Plaintiff cites to specific statutes, regulations, codes of conduct or ethics, etc. that would be violated by selling the Musikfest Steins as German-made when they are in fact of Chinese origin, it is "impossible" for Defendants to respond to Plaintiff's allegations that:

     1.     Such conduct amounts to:

          a.     Fraud in violation of "criminal and consumer protection laws," and

          b.     Wrongdoing as defined by the Whistleblower Law; and

     2.     Plaintiff made a good faith report, as defined by the Whistleblower Law, of this alleged wrongdoing.

(Compl. ¶¶ 23, 32, 41-43, 45-46.)

     Plaintiff need not provide any further detail about her Whistleblower Claim.  Regarding wrongdoing, Defendants' alleged conduct "certainly suggests" a violation of some law intended

to protect the public, in particular consumers, which, being  sufficient to survive a motion to dismiss, see Bielewicz, 2011 WL 1486017, at *5, certainly does not require a more detailed pleading.  Plaintiff's complaint also clearly alleges the facts surrounding her report of this alleged wrongdoing to her superiors.  Nothing more is required of her Complaint.

   Plaintiff does, however, need to provide more detail regarding her Public Policy Claim. As discussed above, Plaintiff claims that she was terminated for refusing to violate criminal law; proper pleading of this claim requires that she identify the criminal statute(s) that the conduct in which she refused to engage would have violated.  See Zoe, 2009 WL 275181, at *4; McCabe, 2006 WL 6049499.  It is patently insufficient for her to make the conclusory allegation that selling Chinese-made beer steins as German-made amounts to fraud that violates unspecified criminal law(s).  See Zoe, 2009 WL 275181, at *4.  While Plaintiff's complaint may not be unintelligible in the usual sense, the Court is mindful that a denial of Defendants' Motion for a More Definite Statement may lead to a motion to dismiss – and the motion to dismiss this claim may succeed, if not on any other basis, due to the very deficiency Defendants assert in their current motion.  See Frederico v. Home Depot, 507 F.3d 188, 201-02 (3d Cir. 2007) (courts "do not consider after-the-fact allegations in determining the sufficiency of [a] complaint under Rule[] . . . 12(b)(6)" (citing Comw. of Pa. ex. rel Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir.1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quotation and citation omitted))).

   Accordingly, in order to avoid the perfunctory dismissal of this cause of action with leave to file an amended complaint at a later date, Defendant's Motion for a More Definite Statement is Granted with respect to Plaintiff's claim for wrongful discharge in violation of public policy.

20

**VI.     Conclusion**

For the above reasons, the Court denies Defendants' Motion to Strike without prejudice and denies in part and grants in part Defendants' Motion for a More Definite Statement, requiring Plaintiff to provide a more definite statement of only her Public Policy Claim.

An appropriate order follows.

O:\CIVIL 12\12-3286 Stoneback v. ArtsQuest\12cv3286.Memo re Mots. to Strike Jury Demand and 12(e) [10-16-12].wpd